FILED

2015 Feb-10  PM 02:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **DONNA FRANKLIN, Individually and** ] | |
| **as Personal Representative of the Estate** ] | |
| **of Ray Franklin, deceased,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | **Case No.: 1:13-cv-0888-KOB** |
| **v.** ] | |
| ] | |
| **CATERPILLAR INC., et al.,** ] | |
| ] | |
| **Defendants.** ] | |

**MEMORANDUM OPINION**

This asbestosis case comes before the court on Defendant Honeywell International Inc.'s "Motion for Summary Judgment," (Doc. 22); Defendant Carlisle Industrial Brake & Friction, Inc.'s "Motion for Summary Judgment," (Doc. 24); Defendant Caterpillar Inc.'s "Motion for Summary Judgment," (Doc. 26); Carlisle's "Motion to Strike Affidavit of Beverly Olds," (Doc. 39); Caterpillar's "Motion to Strike," (Doc. 40); Plaintiff Donna Franklin's Rule 56(d) motion to continue contained in her "Response and Opposition to Motions for Summary Judgment," (Doc. 32); and the court's "Order to Show Cause" as to why Defendant Federal-Mogul should not be dismissed for failure to prosecute, (Doc. 53).

For the reasons discussed below, the court **GRANTS** in part and **DENIES** in part Carlisle's motion to strike, (Doc. 39); and **GRANTS** in part and **DENIES** in part Caterpillar's motion to strike, (Doc. 40). The court **DENIES** the Plaintiff's Rule 56(d) motion to continue contained in her consolidated response to the Defendants' motions for summary judgment, (Doc. 32). The court **GRANTS** Honeywell's motion for summary judgment, (Doc. 22); **GRANTS**

1

Carlisle's motion for summary judgment, (Doc. 24); and **GRANTS** Caterpillar's motion for summary judgment, (Doc. 26). Finally, the court **DISMISSES** Federal-Mogul **WITHOUT PREJUDICE** at the Plaintiff's direction.

## I.      Background

This case concerns Plaintiff Donna Franklin's deceased husband, Ray Franklin. According to the Plaintiff, Ray Franklin's exposure to asbestos led to his death. Ray Franklin spent his working years as a heavy equipment mechanic at various locations near Oxford, Alabama, including Hub Trucking, Inc.; Gold Kist, Inc.; and Thompson Tractor Company, a Caterpillar dealership from 1980 to 2009. According to the Plaintiff, Ray Franklin worked at these locations with asbestos-containing products that were manufactured by Caterpillar, Carlisle, and Honeywell. The alleged asbestos-containing products included brake pads, engine gaskets, and clutch bases.

On May 5, 2011, prior to his death, Ray Franklin filed his first complaint related to asbestos exposure in the Circuit Court of Calhoun County, Alabama entitled *Ray and Donna Franklin v. Gold Kist Holdings, Inc.*, No. CV 2011-153, asserting products liability claims related to his asbestosis against many defendants not joined in this case. These defendants subsequently removed the case to federal court and the court transferred it to the asbestos MDL in the Eastern District of Pennsylvania. *See Franklin v. Dana Holding Corp.*, No. 1:11-cv-02731-PWG (N.D. AL Sept. 6, 2011) (Doc. 16). That case is currently pending before the Judicial Panel for Multidistrict Litigation regarding the Eastern District of Pennsylvania's remand order.

On March 29, 2013, the Plaintiff filed her complaint in this case in the Circuit Court of Calhoun County, Alabama entitled *Donna Franklin v. Caterpillar Inc*, CV 2013-183, asserting

similar products liability claims related to Ray Franklin's asbestosis against Caterpillar, Honeywell, and Carlisle. The Plaintiff lists five counts in her complaint, including "Alabama Extended Manufacturer's Liability Doctrine," "Negligence and Intentional Tort," "Negligence in the Course of Employment," "Fraudulent Concealment/Misrepresentation/Alteration of Medical Studies/Conspiracy/Aiding and Abetting Conspiracy," and "Product Liability, Combined and Concurring Negligence, Intentional Tort and Conspiracy." (Doc. 1-1). The defendants removed the case to this court on May 10, 2013 based on proper diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The Defendants argue that Ray Franklin may or may not have been exposed to asbestos through his work, but that no evidence links Ray Franklin to products manufactured by these Defendants and, thus, summary judgment is appropriate. The court agrees with the Defendants. Before addressing the Defendants' summary judgment motions, however, the court must rule on several motions to determine the record before it for summary judgment purposes.

## II.    Motions to Strike

In her consolidated response to the Defendants' motions for summary judgment, the Plaintiff attaches two new affidavits from Donna Franklin and Beverly Olds. (Doc. 32). Defendants Caterpillar and Carlisle have moved to strike the affidavits as either not admissible under the Federal Rules of Evidence or as sham affidavits. The court agrees that some of Olds' statements in his affidavit are shams. However, the court will consider the remainder of Olds' affidavit and Donna Franklin's affidavit.

### A.    Donna Franklin

The Plaintiff, Donna Franklin, was married to Ray Franklin. Caterpillar moves to strike

the following statement from Donna Franklin's affidavit:

> None of those houses [lived in by Ray Franklin] had any Asbestos in them to the best of my knowledge. Ray did not work with any Asbestos at home or in any hobby that he ever had. He was eventually diagnosed in 2010, as having Asbestosis, and there is no other place that I know of that he could have gotten the exposure to Asbestos, other than from his jobs.

(Doc. 32-2, 2).

A witness may testify to a matter only if the witness had personal knowledge of the matter. *See* Fed. R. Evid. 602. Whether her homes contained asbestos or whether Ray Franklin had any hobby involving asbestos products are matters within Donna Franklin's personal knowledge. Donna Franklin was married to Ray Franklin and lived with him for many years. She is able to testify, to the "best of [her] knowledge," regarding the homes they shared and Ray Franklin's hobbies.

Further, Donna Franklin's conclusion that "there is no other place that [she] know[s] of that [Ray Franklin] could have gotten the exposure to Asbestos" is rationally based on her perception and is not, as Caterpillar suggests, expert testimony. She is not making a medical or expert judgment. Rather, she is stating what she saw over their years together. Her statement is not barred under Fed. R. Evid. 701 and 702.

Therefore, the court **DENIES** Caterpillar's motion to strike Donna Franklins' statement.

## B.   Beverly Olds

Beverly Olds worked with Ray Franklin at Thompson Tractor as a heavy equipment mechanic and he provided an affidavit on August 6, 2014. Carlisle and Caterpillar argue that Olds' affidavit is a "sham" because it directly contradicts, without explanation, his prior deposition testimony from November 30, 2012 and March 5, 2014. The Plaintiff disagrees,

arguing that Olds' affidavit is not inconsistent and would be helpful to a jury.

Carlisle and Caterpillar move to strike the following five statements from Olds' affidavit:

1.  I remember using new and removing old Carlisle brakes and clutches in addition to the other brakes and clutches that we removed and replaced. I remember using Bendix brakes too, and I understand that under its present ownership by Honeywell, Bendix still manufactures those brakes today.

2.  A big part of any mechanic's job was to change and repair brake shoes, clutches, and gaskets**, all of which contained asbestos**.

3.  **This dust contained significant amounts of asbestos from products and materials made with asbestos, like the brake shoes, gaskets and clutches. This dust floated throughout the work bays constantly, exposing all of us who worked there to the asbestos fibers.**

4.  All of the mechanics, including Ray, worked on private equipment that was very old. Those old gaskets were difficult to get off and would have to be ground out, and blown out by an air hose. **The asbestos dust would fill the air in the whole shop when we were working on those gaskets.**

5.  Ray Franklin worked at Thompson Tractor Company, Inc.**, in that asbestos filled environment,** for fourteen years.

(Doc. 32-3 (emphasis added)).

The court will strike the portions of the five statements in bold type above because they are inconsistent with Olds' prior deposition testimony. However, the court will not strike the remainder of Olds' affidavit including the normal type sections of the five statements above because they are consistent with Olds' prior deposition testimony.

"When a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see Santhuff v. Seitz,*

385 F. App'x 939, 945 (11th Cir. 2010) (finding the sham affidavit doctrine also applies to non-parties).

The sham affidavit doctrine "is applied sparingly because of the harsh effect it may have on a party's case." *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir.1987)). Failure of memory or variations in testimony are not sufficient to strike the affidavit; rather, the affidavit and prior testimony must be "inherently inconsistent." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). Thus, the court must make "[a] definite distinction . . . between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 953.

For example, in *Lane v. Celotex Corp.*, another case involving the testimony of a coworker in an asbestos case, the court found the coworker's affidavit not to be a sham. *See* 782 F.2d 1526, 1532 (11th Cir. 1986). The court focused on the clarity and structure of Celotex's questioning and whether the affidavit and deposition testimony could both logically be true. *See Lane*, 782 F.2d at 1532; *see Tippens*, 805 F.2d at 954 (finding statement not a sham because affidavit and deposition testimony not in "irreconcilable conflict").

Thus, Olds' affidavit statements are not shams unless the statements and prior testimony are inherently inconsistent and not merely distinctions or elaborations that go to the weight and credibility of the testimony.

## 1.    New Product Brands

First, the court reviews the following challenged statement  from Olds' affidavit:

1.    I remember using new and removing old Carlisle brakes and clutches in

6

addition to the other brakes and clutches that we removed and replaced. I remember using Bendix brakes too, and I understand that under its present ownership by Honeywell, Bendix still manufactures those brakes today.

(Doc. 32-3, 2-3).

This statement is consistent with Olds' deposition testimony. In Olds' 2012 deposition, he stated that he could not name any particular brand of brake assembly, brake shoe, or clutch that *Ray Franklin* would have removed or installed. Olds' testified:

> Q:   Are you able to testify under oath that you have a specific recollection of Ray Franklin working around a brake assembly that was manufactured by a particular company?
> A:   No.
> Q:   You would be speculating?
> A:   Exactly.
> . . .
> Q:   My question was that, even if you could say that, you wouldn't have a way of knowing whether the brake pad that was on that brake assembly came from the brake manufacturer or came from a refurbisher, correct?
> A:   Right.
> . . .
> Q:   Are you able – on the six times that you recall doing a clutch replacement work hands-on with Ray Franklin, are you able to testify who the manufacturer of the clutch that was being removed was?
> A:   No.
> Q:   You would be speculating?
> A:   Speculating. I couldn't remember. I've done probably a thousand clutch jobs in 40 years. And it's hard to remember six out of a thousand.

(Doc. 24-9, 15-16).

However, on further examination in 2014, Olds testified that he could recall *personally* working with Carlisle brake pads. Olds testified:

> Q:   . . . Do you remember working with any brake products at all called Carlisle Brake and Friction or Motion Control?
> A:   During my career?
> Q:   During your career?
> A:   Yes, sir.

> . . .
> Q:     Mr. Olds, I think you told us a minute ago that you had recalled replacing some
>        refurbished brake shoes that you thought were done by Carlisle?
> A:     I didn't say they were done by Carlisle. I said that they had Carlisle pads on them.
> . . .
> Q:     How could you tell if a brake – refurbished brake shoe was, or pad or – was a
>        Carlisle versus somebody else?
> A:     Unless I put them on there, I wouldn't know.

(Doc. 24-3, 32, 44).

Further, in 2014 Olds testified that he could recall *personally* working with

Honeywell/Bendix air compressors, a brake component.

> Q:     Okay. Now, do you remember using parts that had the Bendix name on it during
>        your work at Thompson Caterpillar?
> A:     Yeah.
> Q:     And what kind of parts would that be, Mr. Olds?
> A:     The only ones that I remember actually handling or dealing with myself were air
>        compressors.
> . . .
> Q:     Oh, okay. The air compressor that worked the brakes?
> A:     Yeah.

(Doc. 24-3, 36-37).

Olds testified at his deposition that he remembers personally working with Carlisle brake

pads and Honeywell/Bendix air compressors at some point in his career. Now, in his affidavit,

Olds remembers "using new and removing old Carlisle brakes and clutches" and "using Bendix

brakes too." This new statement is consistent with his prior testimony.

Similarly, in *Rollins v. TechSouth, Inc.*, the court found a terminated employee's

statements in an affidavit that Ms. Hill, a coworker, made discriminatory comments in the course

of casual conversation not to be a sham. 833 F.2d 1525, 1530-31 (11th Cir. 1987). At her

deposition, the defendant asked the terminated employee questions about whether *other*

8

*employees* made discriminatory comments, but did not ask about Ms. Hill. *Id.* Thus, the affidavit did not conflict. *Id.*

Here, just like in *Rollins*, Olds' deposition testimony and his later affidavit can both be logically true because he previously did not remember any contact by Ray Franklin with Carlisle and Honeywell/Bendix products, but did remember his own contact with some Carlisle and Honeywell/Bendix products. His new statement that he worked with a larger group of Carlisle and Honeywell/Bendix products can be viewed as an elaboration on his prior testimony. In viewing Old's affidavit as an elaboration, the court complies with the admonition to apply the sham affidavit doctrine "sparingly." *See Allen*, 495 F.3d at 1316.

### 2.    Asbestos in Products

Second, the court reviews the following challenged statement by Olds:

2.    A big part of any mechanic's job was to change and repair brake shoes, clutches, and gaskets, **all of which contained asbestos**.

(Doc. 32-3, 3 (emphasis added)).

In his deposition Olds could not say whether the brake shoes, clutches, and gaskets he worked with contained asbestos. Regarding *brake shoes*, Olds testified:

Q:    Okay, Let me ask you now – well, do you believe that the rear axles made by Spicer contained asbestos?
A:    The brakes shoes might have. The axles didn't.

(Doc. 24-9, 24).

Q:    Okay. But just to conclude then, as to the relined shoes that you installed on these heavy trucks – you got there in 1994 at Thompson – you don't know whether those particular shoes had asbestos in them or not, do you?
A:    I can't say for sure that they did or that they didn't.

(Doc. 24-3, 33; *see* Doc. 24-3, 32 (same)).

Regarding *gaskets*, Olds testified:

> Q:   Can you describe a little bit about any different kinds of gaskets that were on those engines?
>
> A:   There were several different types. A lot of the gasket material that Caterpillar used were O-rings. Some of them were steel gaskets, and some of them were made of God knows what. I have no idea what they were made out of. May have been made of asbestos. I don't know. Can't say.

(Doc. 24-9, 18-19).

> Q:   Do you have any information or basis to say that Ray Franklin removed engine gaskets that contained asbestos while he was a Thompson employee?
>
> A:   No more so than I know that I did. I don't know. All we know is what we were told or what we came to understand through the grapevine.

(Doc. 24-3, 25; *see* Doc. 24-9, 25 (same); *see* Doc. 24-3, 21 (same)).

While Olds initially said *clutches* contained asbestos, he revised his testimony and admitted that he could not say whether any clutches contained asbestos. Olds testified:

> Q:   Do you believe that those clutches contained asbestos in the '90s?
>
> A:   Yes, I do.

(Doc. 24-9, 23).

> Q:   So it is your understanding that it's approximately the mid '80s that some of the brakes and clutches were beginning to shift over from asbestos containing to asbestos free?
>
> A:   Right. Supposedly.
>
> Q:   Well, that word then makes me ask what you mean by, why did you add the word "supposedly"?
>
> A:   Because I don't know the difference between asbestos and cardboard.
>
> Q:   Okay. In other words, if you put out two brake pads and two clutches on this table, and if one was asbestos –had asbestos fibers embedded in it and one was a hundred percent asbestos free, could you tell the difference?
>
> A:   No, sir. And you couldn't either.

(Doc. 24-3, 14).

In contrast, Olds clearly stated that *heat shields* contained asbestos. Olds testified:

10

> Q:     Do you have any knowledge or information, Mr. Olds, as to whether or not Caterpillar diesel truck engines used to have asbestos containing materials in them?
>
> A:     I don't know that they have asbestos material in them. But they did have it in the heat shields that were on them.

(Doc. 24-3, 14; *see* Doc. 24-9, 18 (same); *see* Doc. 24-9, 12-13 (same)).

To now state that all brake shoes, clutches, and gaskets contained asbestos is inherently inconsistent because his new and old statements cannot both be logically true.

For example, in *Latimer v. Roaring Toyz, Inc.*, the court found a photographer's statement "I did not know that Del Cioppo or Fisher forwarded the photographs to Kawasaki" a sham because of earlier deposition testimony that the photographer knew that Kawasaki intended to use the photos or knew that Kawasaki might use the photos. 601 F.3d 1224, 1237 (11th Cir. 2010). The court found the affidavit to be a sham because the photographer stated he now knew what he previously did not know. *Id.*

Similar to *Latimer*, Olds cannot now know a fact that he earlier said he did not know to be true or false without creating inherently inconsistent statements. *See* 601 F.3d at 1237. Further, Olds provides no explanation for his newfound certainty. "A sham is a sham." *Santhuff*, 385 F. App'x at 945.

**3.     Asbestos Dust**

Third, the court reviews the following challenged statements by Olds:

3.     **This dust contained significant amounts of asbestos from products and materials made with asbestos, like the brake shoes, gaskets and clutches. This dust floated throughout the work bays constantly, exposing all of us who worked there to the asbestos fibers.**

4.     All of the mechanics, including Ray, worked on private equipment that was very old. Those old gaskets were difficult to get off and would have to

11

be ground out, and blown out by an air hose. **The asbestos dust would fill the air in the whole shop when we were working on those gaskets.**

5.   Ray Franklin worked at Thompson Tractor Company, Inc.**, in that asbestos filled environment,** for fourteen years.

(Doc. 32-3, 3-4 (emphasis added)).

Olds now states in his affidavit that the Thompson Tractor shop contained asbestos dust.

Previously, however, Olds testified:

Q:   Calling a shop dusty is not saying that all – is not saying that that dust is asbestos dust?
A:   No. That wasn't what I said.
Q:   Okay. I just wanted to make sure.
A:   I just said it was dusty.

(Doc. 24-3, 39).

To now state that the shop contained asbestos dust is inherently inconsistent because his new and old statements cannot both be logically true. Further, Olds provides no explanation for his new, contradictory opinion. "A sham is a sham." *Santhuff*, 385 F. App'x at 945.

In summary, the bolded portions of Olds' statements are shams because they "merely contradict, without explanation, previously given clear testimony." *Van T. Junkins & Assoc.*, 736 F.2d at 657.

Further, to the extent the Plaintiff argues that Olds is able to make the statements in his affidavit because he is skilled in his trade, the court agrees with Caterpillar's argument that the bolded sections of Olds' statements are "pure guesswork." As Olds himself admits at his deposition, he cannot tell asbestos from cardboard and cannot say whether his work environment contained asbestos products or asbestos dust. (Doc. 24-3, 14).

Thus, the court **GRANTS** Carlisle and Caterpillar's motions to strike as to the bolded

portions of the five statements in Olds' affidavit discussed above. The court **DENIES** the remainder of Carlisle and Caterpillar's motions to strike Olds' affidavit.

### III.     Rule 56(d) Motion to Continue

Next, the court must consider whether to defer consideration of Caterpillar's motion for summary judgment to allow the Plaintiff to more adequately develop the record. The Plaintiff argues in her Rule 56(d) motion contained in her consolidated response to the Defendants' motions for summary judgment that she is unable to adequately respond to Caterpillar's motion for summary judgment because she needs information from Caterpillar about which asbestos-containing Caterpillar products may have been present in locations where Ray Franklin worked so that she can then ask his coworkers whether they remembered Ray Franklin working on these products. Caterpillar has not yet provided a Rule 30(b)(6) corporate witness for deposition. Thus, the Plaintiff argues that the court should defer ruling on Caterpillar's motion for summary judgment until after a Rule 30(b)(6) deposition of Caterpillar. The court disagrees.

This motion is a case of too little, too late. While the Plaintiff did request a Rule 30(b)(6) deposition, she did not actively pursue the request or alternative means of obtaining the needed information during discovery and actually agreed to defer the Rule 30(b)(6) deposition until after the court ruled on the Defendants' motions for summary judgment.

### A.     Facts Regarding Discovery[1]

On July 12, 2013, the Plaintiff sent written discovery requests to Caterpillar asking for

---

[1]The Plaintiff incorporated her August 8, 2014 motion to compel discovery, (Doc. 31), into her Rule 56(d) motion to continue, (Doc. 34). The facts come from the parties' briefing on the motion to compel. Magistrate Judge Ott denied the Plaintiff's motion to compel discovery without prejudice on September 24, 2014. (Doc. 52).

13

information on every "asbestos-containing product" sold by Caterpillar, with some requests asking for information as far back as 1928. (Doc. 14). On July 29, 2013, in response, Caterpillar asked the Plaintiff to approve a draft protective order so that it could release sensitive and confidential documents. Caterpillar followed up about the draft protective order on August 8, 2013 and August 14, 2013, but the Plaintiff failed to approve the draft protective order. Finally, Caterpillar responded to the Plaintiff's written discovery on August 14, 2013, by providing some information and asking for specific clarification as to which products the Plaintiff wanted information on so that Caterpillar could adequately respond.

On September 11, 2013, the Plaintiff noticed, in the words of the Plaintiff's attorney, a "very broad" Rule 30(b)(6) deposition for September 24, 2013, covering all "asbestos-containing products" of Caterpillar. (Doc. 14). On September 20, 2013, Caterpillar objected to the Rule 30(b)(6) deposition because no evidence existed that Ray Franklin worked around asbestos-containing Caterpillar products, because the Plaintiff had not yet made her product identification witnesses available for deposition, and because of the overly-broad scope of the Rule 30(b)(6) notice. (Doc. 15).

On October 2, 2013, the Plaintiff responded by letter to Caterpillar's objection to the Rule 30(b)(6) request and noted that (1) she had identified seventeen people who might have product-identification testimony; (2) prior depositions of some of those seventeen people in a related lawsuit generally referenced Caterpillar gaskets and, according to the Plaintiff's attorney, "[t]he fact is that Caterpillar did sell gaskets;" and (3) she agreed to narrow the Rule 30(b)(6) request to cover all engine gaskets manufactured by Caterpillar during the 25-year period from 1984 to 2009.

The parties exchanged emails from October 18, 2013 through December 18, 2013 regarding scheduling the depositions of the product-identification witnesses before the discovery deadline. Caterpillar sent most of the emails and appears to have been much more interested in completing the depositions by the court's scheduling deadline. Ultimately, however, the parties jointly sought to amend the scheduling order and the court approved the Plaintiff's unopposed motion to amend, (Doc. 20), on December 26, 2013.

On January 16, 2014, the Plaintiff sent a letter to Caterpillar to discuss setting up product-identification witness depositions. In the letter, the Plaintiff's attorney stated:

> As to the products that Mr. Franklin was exposed to, again, I think those are best described in the depositions. As noted there, Mr. Franklin was exposed to Caterpillar engines, transmissions, braking systems, and the like which frequently came in as heavily used older equipment that required rebuilding or rework that necessitated grinding off old gaskets and removing old equipment that we believe contained asbestos.

(Doc. 31-8). The Plaintiff also stated she would create a list of Caterpillar products from the depositions and Caterpillar publications. The court does not know whether the Plaintiff ever created this list. Finally, the Plaintiff re-iterated her request for a Rule 30(b)(6) deposition and followed up on the request the next day.

On February 14, 2014, the Plaintiff asked again about the Rule 30(b)(6) deposition and the Plaintiff's attorney noted "it's going to be hard to get complete co worker depositions if we don't have the facts on which Caterpillar products at Thompson had asbestos and when, and have that information before the depositions." (Doc. 31-1).

On March 6, 2014, the parties deposed Beverly Olds, the first product-identification witness deposition taken in the case. After the deposition, the Plaintiff continued to request a

Rule 30(b)(6) deposition by letter on April 4, 2014 and email on April 25, 2014. On May 7,

2014, Caterpillar re-sent the draft protective order that the Plaintiff never completed. On May 29,

2014, the Plaintiff's attorney noted that Caterpillar and the Plaintiff "have been discussing a

30(b)(6) deposition of Caterpillar." (Doc. 31-5).

On June 26, 2014, the parties jointly moved for additional extensions to the deadlines in

the case. (Doc. 21). The motion, filed by the Plaintiff, stated that "Defendants intend to soon file

motions for summary judgment on the sufficiency of Plaintiff's product identification evidence."

The parties also requested the court to establish the following deadlines (among others):

> 7/10/14 Deadline for Defendants to file motions for summary judgment based on
> product identification and/or statute of limitations.
>
> 7/31/14 Plaintiff to file responses to any MSJ.
>
> 8/7/14 Defendants to file replies to any MSJ.
>
> **11/14/14 Deadline for Plaintiff to depose any 30(b)(6) of Defendant(s) who
> remain after initial motions for summary judgment are ruled upon.**

(Doc. 21). The court granted the parties' joint motion on June 30, 2014.

On July 10, 2014, Caterpillar moved for summary judgment because, according to

Caterpillar, the Plaintiff had not shown any evidence that Ray Franklin had been exposed to an

asbestos-containing Caterpillar product. On July 30, 2014, the Plaintiff's attorney emailed

Caterpillar and stated:

> There are still just too many issues that we would need to have Caterpillar
> representatives address to us to be properly prepared to defend the motion for
> summary judgment without the 30(b)(6) deposition.

(Doc. 34-8). The Plaintiff attached a draft motion to compel to the email. Caterpillar responded

that the Plaintiff had already agreed in the revised scheduling order to defer Rule 30(b)(6)

16

depositions until after the product-identification motion for summary judgment and that no

Caterpillar representative could provide information about what Caterpillar products Ray

Franklin handled. The Plaintiff's attorney responded and stated:

> What it is that we need to know from Caterpillar is, in some detail, which items
> had Asbestos that would have been of the common kind their dealers would have
> been repairing or changing out through workers such as Mr. Franklin.

(Doc. 34-10).

On August 8, 2014, Caterpillar stated it would not provide a Rule 30(b)(6) deposition

until after the court ruled on Caterpillar's motion for summary judgment on product-

identification. The Plaintiff filed a motion to compel the Rule 30(b)(6) deposition later that day

and the prior judge assigned to this case referred the motion to compel to Magistrate Judge Ott.

On August 11, 2014, the Plaintiff responded to Caterpillar's motion for summary judgment. In

her motion, the Plaintiff asked the court to defer ruling on the motion for summary judgment

under Rule 56(d) until a Rule 30(b)(6) deposition of Caterpillar could be taken.

Judge Ott properly denied the Plaintiff's motion to compel without prejudice on

September 24, 2014, noting that the motion to compel overlapped with the Rule 56(d) motion to

continue and that the Plaintiff's request would better be addressed in the context of the motion

for summary judgment. (Doc. 52).

### B.    Standard of Review

Pursuant to Rule 56(d):

[i]f a nonmovant [to a motion for summary judgment] shows by affidavit or
declaration that, for specified reasons, it cannot present facts essential to justify its
opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or

17

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

"Summary judgment may only be decided upon an adequate record" and the party opposing summary judgment must inform the court of any outstanding discovery. *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870-71 (11th Cir. 1988) (quoting *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988)). A court *must* address a Rule 56(d) motion to continue before granting summary judgment. *See Snook*, 859 F.2d at 870. However, whether to grant a continuance under Rule 56(d) is up to the sound discretion of the trial court. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1338-39 (11th Cir. 2012).

"[T]he law of our circuit is that generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (quoting *Snook*, 859 F.2d at 870). "Nevertheless, the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter*, 461 F.3d at 1324. "Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of [Rule 56(d)] by presenting specific facts explaining the inability to make a substantive response." *Virgilio*, 680 F.3d at 1338-39 (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). This requirement is "particularly [so] where . . . ample time and opportunities for discovery have already lapsed." *Spence & Green Chem. Co.*, 612 F.2d at 901.

The non-moving party's delay in complaining about deficient discovery is grounds for a court to deny a Rule 56(d) request. *See Virgilio*, 680 F.3d at 1339; *see Cordero v. Readiness Mgmt. Support, L.C.*, 2012 WL 3744513, at *3 (M.D. Fla. Aug. 29, 2012) (Rule 56(d) motion

18

denied "where the absence of evidence essential to that party's case is the result of that party's lack of diligence in pursuing such evidence through permitted methods of discovery"). Fairness, equity, and whether a party had a reasonable opportunity to discover information are also considerations in deciding a Rule 56(d) motion. *See Church v. Accretive Health, Inc.*, 2014 WL 7184340, at *13 (S.D. Ala. Dec. 16, 2014).

### C.    Analysis

The court will deny the Plaintiff's request to delay consideration of Caterpillar's motion for summary judgment pursuant to Rule 56(d). The Plaintiff did not actively pursue a realistic Rule 30(b)(6) deposition or alternative means of gathering the needed information during the nine months of product-identification discovery and agreed to defer the deposition until after the court ruled on the Defendants' motions for summary judgment.

First, the Plaintiff delayed the Rule 30(b)(6) deposition and delayed seeking relief from the court. The Plaintiff *agreed* to defer her Rule 30(b)(6) request until after the court ruled on Caterpillar's motion for summary judgment. The motion to amend the scheduling order submitted by the Plaintiff places Rule 30(b)(6) depositions, for any "Defendant(s) who remain," *after* the court rules on motions for summary judgment on product-identification issues. (Doc. 21). Further, the Plaintiff failed to file her motion to compel until too late in the case. She noticed a Rule 30(b)(6) deposition of Caterpillar in September 2013, but did not file her motion to compel until August 2014, 11 months later, well past the end of discovery, and after Caterpillar filed its motion for summary judgment.

Second, the Plaintiff did not pursue the Rule 30(b)(6) deposition diligently. While the Plaintiff did notice a Rule 30(b)(6) deposition in September 2013, the notice exceeded the scope

of reasonable discovery, requesting everything related to every "asbestos-containing product" Caterpillar has ever been associated with for the last 85 years! In the spirit of cooperation, the Plaintiff did subsequently agree to limit her discovery request to all Caterpillar engine gaskets for a 25-year period. This overly-broad deposition notice did nothing to effectuate real discovery and instead merely triggered an objection from Caterpillar and no substantive discussion about the notice beyond the Plaintiff's repeated refrain that Caterpillar agree to the still overly-broad deposition notice.

Also, the Plaintiff failed to cooperate in discovery leading to two large discovery extensions. The Plaintiff failed to approve a draft protective order from Caterpillar to facilitate discovery for at least 11 months. Further, the Plaintiff failed to provide contact information to Caterpillar for the witnesses *she* planned to rely on in her initial disclosures, as required by Fed. R. Civ. P. 26(a)(1)(A), even though the Plaintiff admits that she had this information, further delaying product-identification discovery. The Plaintiff's failure to actively work with Caterpillar to set product-identification witness depositions between October and December 2013 caused the parties to fail to meet their first discovery deadline. Then, from January 2014 to June 2014, the parties only managed to depose one person. The Plaintiff's failure to use her time wisely is sufficient ground to deny her Rule 56(d) request. *See F.T.C. v. Lalonde*, 545 F. App'x 825, 836 (11th Cir. 2013) (finding court's denial of request to stay case not an abuse of discretion because court previously granted discovery extensions).

Finally, the Plaintiff had alternative, less burdensome means to seek this discovery. The Plaintiff ultimately wants to ask Ray Franklin's coworkers whether they remember him working on certain Caterpillar engine gaskets. However, counsel for Caterpillar already attempted to elicit

this information at Olds' deposition. Counsel for Caterpillar asked Olds whether he generally remembered working on certain engine models. Counsel for the Plaintiff did not follow up on this line of questioning. Further, the Plaintiff could have sought to determine which vehicles Thompson Tractor serviced by subpoenaing its records. Finally, the Plaintiff could have followed up on the specific information she sought in supplemental written discovery. The court has no evidence that the Plaintiff sought these other forms of discovery.

While the court will not consider a motion for summary judgment until the parties have had adequate opportunity for discovery, the court need not wait until the end of time. The Plaintiff failed to diligently pursue discovery and delayed her complaint about Caterpillar's denial of her overly-broad Rule 30(b)(6) notice until almost a year after serving it. These tactics are sufficient grounds to deny the Plaintiff's Rule 56(d) motion. *See Virgilio*, 680 F.3d at 1339. Also, though the Plaintiff complains about insufficient responses to her written discovery in her motion to compel, the parties indicated at the motion to compel hearing before Judge Ott on September 17, 2014, that the entry of a protective order resolved the written discovery issue.

### D.    Conclusion

In summary, the court denies the Plaintiff's Rule 56(d) request to defer consideration of Caterpillar's motion for summary judgment until after a Rule 30(b)(6) deposition of Caterpillar. The court granted the Plaintiff two large discovery extensions and only received a motion to compel the Rule 30(b)(6) deposition at the eleventh hour. Further, the Plaintiff's own delay and failure to diligently seek discovery led to her lack of ammunition to rebut Caterpillar's motion. Discovery disputes are often, in the end, questions about fairness and it would be unfair to Caterpillar to reopen discovery at this late hour.

21

Thus, the court **DENIES** the Plaintiff's Rule 56(d) motion to continue and will decide Caterpillar's motion for summary judgment, along with Carlisle's and Honeywell's motions for summary judgment, on the current record.

### IV.   Motions for Summary Judgment

### A.   Facts

The court takes the facts in the light most favorable for the Plaintiff. However, because the Plaintiff failed to provide her facts in separate, numbered paragraphs or to otherwise adhere to the guidelines in Appendix II to the court's initial order, (Doc. 4), the court is left to generally follow the Defendants' statements of material fact along with additional facts the court finds in the record. The material facts, for summary judgment purposes, are as follows.

Ray Franklin worked as a heavy equipment mechanic at Hub Trucking from 1980 to 1984; at Gold Kist from 1984 to 1994; and at Thompson Tractor from December 1994 to 2009. Ray Franklin worked as a truck mechanic at Thompson Tractor until 2003 and then worked as a forklift mechanic until 2009 when Thompson Tractor laid him off. While at Thompson Tractor, he worked with between three and six other mechanics at any given time in a single shop. Thompson Tractor is a Caterpillar authorized dealership.

In April 2011, Ray Franklin's doctors diagnosed him with asbestosis. Ray Franklin died October 23, 2011, before providing any testimony.

On May 5, 2011, prior to his death, Ray Franklin filed his first complaint related to asbestos exposure. The defendants in that case deposed Ray Franklin's coworkers, Jimmy Hill, Michael Lumpkin, Jerry Crow, Terry Bohannon, and Beverly Olds in Ray Franklin's first case.

On March 29, 2013, the Plaintiff filed her complaint in this case related to Ray Franklin's

asbestos exposure. The Defendants deposed Olds in this case as well. Additionally, Ray Franklin's coworkers Donald Morgan, Wayne Holt, Alban Morris, Steve Dempsey, and Billy Turner provided declarations.

Carlisle makes brake pads, but no Carlisle brake pads contained asbestos after 1986. Honeywell, under the Bendix line, makes brake products, including air compressors, and clutch bases, but no Honeywell/Bendix brake products or clutch bases contained asbestos after 2001. Caterpillar makes engine gaskets, but no Caterpillar engine gaskets contained asbestos after April 1990.

Olds is the only Hub Trucking employee to testify by deposition. Olds worked at Hub Trucking from 1989 to 1991 and 1993 to 1994. The Plaintiff has provided no evidence of any connection between Ray Franklin and Carlisle, Honeywell/Bendix, or Caterpillar products during the period when Ray Franklin worked at Hub Trucking.

Hill, Lumpkin, and Morgan are the only Gold Kist coworkers of Ray Franklin to testify by deposition. Hill, Lumpkin, and Morgan do not remember Carlisle, Honeywell/Bendix, or Caterpillar products being present while Ray Franklin worked at Gold Kist.

Bohannon, Olds, Crow, Holt, Morris, Dempsey, and Turner are the Thompson Tractor coworkers of Ray Franklin to testify by deposition or provide declarations. Holt, Morris, Dempsey, and Turner are "not aware of the brand name, trade name, manufacturer, or supplier of any brake or clutch parts, assemblies, or components Ray Franklin may have used at Thompson Tractor." (Doc. 24-10; Doc. 24-11; Doc. 24-12; Doc. 24-13).

Bohannon mentioned that Honeywell/Bendix manufactured air compressors, a brake component, but did not state whether Thompson Tractor used Honeywell/Bendix air

compressors. Olds remembered using Honeywell/Bendix brake products, but never saw Franklin

work with a Honeywell/Bendix brake product in any way. Olds also remembered using Carlisle

brake and clutch products, but could not say whether Ray Franklin installed or replaced Carlisle

brake and clutch products.

Crow stated that truck mechanics spent around 80 percent of their time at Thompson

Tractor repairing engines with the vast majority of work performed on Caterpillar engines.

Bohannon stated that Caterpillar engines used Caterpillar parts, including engine gaskets, and

that an engine repair would include replacing a gasket 90 percent of the time. Olds remembered

using many different Caterpillar parts at Thompson Tractor, but only thought that heat shields

and engine gaskets might contain asbestos.

Caterpillar heat shields never contained asbestos. New gaskets installed at Thompson

Tractor after April 1990 did not contain asbestos. Further, according to Caterpillar's Manager of

Litigation Technical Support, "[s]ome but not all gaskets in some but not all of the on-highway

truck engines that Caterpillar manufactured prior to 1990 may have contained asbestos-

containing gaskets." (Doc. 27-4, 3). The "greater majority" of engine gaskets are removed when

they are three to five years old though some engine gaskets might last up to ten years. (Doc. 24-3,

40-41). Olds does not know whether Ray Franklin ever removed a Caterpillar gasket that

contained asbestos.

### B.    Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary

judgment allows a trial court to decide cases when no genuine issues of material fact are present

and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a

district court reviews a motion for summary judgment, it must determine two things: (1) whether

any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to

judgment as a matter of law. *See id.* at 56(c).

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering

evidence showing no dispute of material fact or by showing that the non-moving party's evidence

fails to prove an essential element of its case on which it bears the ultimate burden of proof. *See*

*Celotex*, 477 U.S. at 322–23. Rule 56, however, does not require "that the moving party support

its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more

than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go

beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000). "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving

26

party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*,

477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court

must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is

entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### C. Analysis

### 1. Product-identification Threshold Requirement

To prevail on an asbestos products liability claim, a plaintiff must show that a defendant's

product, more likely than not, was a substantial factor in causing a plaintiff's harm. *See Sheffield*

*v. Owens-Corning Fiberglass Corp.*, 595 So. 2d 443, 450 (Ala. 1992) (discussing asbestos claim

in Jones Act context and noting the "standards of proof on the issue of causation are equally

applicable in strict products liability claims."). Evidence that leads to the equal inference that a

defendant's product *may or may not* have caused a plaintiff's injury is insufficient to establish

causation. *See Turner v. Azalea Box. Co.*, 508 So. 2d 253, 254 (Ala. 1987).

A "threshold requirement" of an asbestos products liability claim "is identification of the

injury-causing product and its manufacturer." *Sheffield*, 595 So. 2d at 450 (quoting *Marshall v.*

*Celotex Corp.*, 651 F. Supp. 389, 393 (E.D. Mich. 1987)). A plaintiff may use circumstantial

evidence to identify the injury-causing product and its manufacturer. *See Sheffield*, 595 So. 2d at

450. Mere possibilities, speculation and conjecture, or when the probabilities are at best evenly

balanced, is not sufficient to show product-identification, however. *Id.* at 450-51.

Here, the Plaintiff must at least prove that the Defendants' asbestos-containing products

existed at Ray Franklin's workplace. *See Sheffield*, 595 So. 2d at 451. Also, the Plaintiff must

show that Ray Franklin worked in the vicinity of the Defendants' asbestos-containing products.

*See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985). The "absence of specification" about a product, such as testimony from a coworker that he remembers the product, but never used the product, could not remember when or where he had seen the product, and could not place the decedent with a product, militates against identification. *See Sheffield*, 595 So. 2d at 454-55.

For example, in *Lewis v. Asbestos Corp.*, the court granted summary judgment under Alabama law based on testimony from the decedent's brother "that he could not personally identify his brother as having worked with a Westinghouse turbine" and that the decedent did little work around Westinghouse turbines. *See* 2011 WL 5881184, *1 (E.D. Pa. 2011).

Here, to satisfy the threshold requirement of product-identification, the Plaintiff must show with some specificity that Carlisle, Honeywell/Bendix, or Caterpillar asbestos-containing products existed at Ray Franklin's workplace and that he worked in the vicinity of those products.

### 2.      Carlisle

The Plaintiff provided no evidence that Ray Franklin worked in the vicinity of asbestos-containing Carlisle products. The Plaintiff does not have any testimony from Ray Franklin and Olds is the only coworker of Ray Franklin who even mentioned the word "Carlisle" in his testimony.

In Ray Franklin's 2011 case, Olds stated that he worked with Carlisle brake pads while employed at Hub Trucking from 1989 to 1991 and 1993 to 1994. However, this testimony is irrelevant because Olds did not work at Hub Trucking at the same time as Ray Franklin. Ray Franklin worked at Hub Trucking from 1980 to 1984. Thus, Olds could not know what Carlisle

products Ray Franklin might have used while working at Hub Trucking.

In this case, Olds stated that he remembers seeing worn down Carlisle brake pads on refurbished brake shoes on trucks that came into Thompson for brake jobs. Later, he clarified that he could not determine whether a refurbished brake shoe contained a Carlisle brake pad unless he originally installed the brake shoe being replaced. Thus, he could not determine whether any brake shoes installed before 1994, the year he began working at Thompson Tractor, contained Carlisle brake pads. No Carlisle brake pad contained asbestos after 1986, long before Olds ever installed his first brake pad at Thompson Tractor. Further, Olds could not say whether Ray Franklin ever installed or replaced *any* Carlisle brake pads.

Thus, the Plaintiff produced no evidence that an asbestos-containing Carlisle brake pad existed in Ray Franklin's workplace or that Ray Franklin worked with *any* Carlisle brake pad. The Plaintiff failed to make the threshold showing of product-identification. Therefore, the court **GRANTS** Carlisle's motion for summary judgment. (Doc. 24).

### 3.      Honeywell/Bendix

The Plaintiff provided no evidence that Ray Franklin worked in the vicinity of any asbestos-containing Honeywell/Bendix products. The Plaintiff does not have any testimony from Ray Franklin and Bohannon and Olds are Ray Franklin's only coworkers who even mentioned the word "Bendix" in their testimony.

Bohannon stated "Cat manufactures air compressors, and Bendix is the other main manufacturer of air compressors." (Doc. 24-8, 42). This testimony is irrelevant because Bohannon does not state whether Thompson Tractor used Honeywell/Bendix air compressors or whether Ray Franklin ever worked on or near a Honeywell/Bendix air compressor.

29

Olds remembered "handling or dealing with" Honeywell/Bendix air compressors at Thompson Tractor. (Doc. 24-3, 36). Olds would take the air compressors off, clean them, and reinstall or replace them. Olds did not know whether Ray Franklin ever worked on or near a Honeywell/Bendix air compressor, however.

Thus, the Plaintiff produced no evidence that Ray Franklin worked with any Honeywell/Bendix product and produced little specific evidence about the presence of Honeywell/Bendix products at Ray Franklin's workplace. The Plaintiff failed to make the threshold showing of product-identification. Therefore, the court **GRANTS** Honeywell's motion for summary judgment. (Doc. 22).

### 4.     Caterpillar

The Plaintiff provided no evidence that Ray Franklin worked in the vicinity of any asbestos-containing Caterpillar products. The Plaintiff does not have any testimony from Ray Franklin. Instead, the Plaintiff argues, based on coworker testimony, that Ray Franklin must have been exposed to asbestos-containing Caterpillar products because he worked for 15 years at a Caterpillar dealership; spent 80 percent of his time repairing engines; primarily repaired Caterpillar engines; removed old Caterpillar engine gaskets 90 percent of the time he repaired Caterpillar engines; and used Caterpillar parts to repair Caterpillar engines.

Ray Franklin did spend most of his time at Thompson Tractor working on Caterpillar engines. Caterpillar engine repair typically involved removal of a Caterpillar engine gasket. However, all Caterpillar products were asbestos free by April 1990, four years and eight months before Ray Franklin began working at Thompson Tractor in December 1994. Thus, all new Caterpillar parts Ray Franklin might have *installed* after he began work there in December 1994,

30

including all engine gaskets, did not contain asbestos.

Instead, the only potentially asbestos-containing Caterpillar products are the engine gaskets Ray Franklin *removed*. However, the "greater majority" of engine gaskets are removed when they are three to five years old. (Doc. 24-3, 40-41). Thus, most Caterpillar engine gaskets Ray Franklin removed would have been installed after April 1990 and, thus, asbestos free.

Some engine gaskets could outlive the typical three-to-five year life span of an engine gasket. Olds testified:

> Q: Even a truck that's 10 years old, been running on the roads 10 years, the chance that you would go in and do an engine repair and encounter a 10-ten-year old gasket?
> A: Not unheard of.

(Doc. 24-3, 40). But the Plaintiff must show "substantial proof" that Ray Franklin worked in the vicinity of asbestos-containing Caterpillar products based on the small number of Caterpillar engine gaskets installed before April 1990 that Ray Franklin might have *removed*.

However, as Caterpillar's Manager of Litigation Technical Support notes, only "*[s]ome* but not all gaskets in *some* but not all of the on-highway truck engines that Caterpillar manufactured prior to 1990 *may* have contained asbestos-containing gaskets." (Doc. 27-4, 3 (emphasis added)).

The chain of inferences the Plaintiff must navigate to link Ray Franklin to an asbestos-containing Caterpillar product is simply too great to create substantial proof. Mere possibilities, speculation and conjecture, or when the probabilities are at best evenly balanced, is not sufficient to prove identification of a defendant's product. *Sheffield*, 595 So. 2d at 450-51.

Finally, to the extent the Plaintiff argues that Ray Franklin was exposed to different

31

Caterpillar products after Thompson Tractor transferred him to the forklift division in 2003, the court notes that the Plaintiff provided no additional facts than those discussed above to show that Ray Franklin worked with any asbestos-containing Caterpillar parts in the forklift division. Further, Ray Franklin did not work in the forklift division of Thompson Tractor until 13 years after all Caterpillar products were asbestos free.

Therefore, the court **GRANTS** Caterpillar's motion for summary judgment. (Doc. 26).

### V.      Order to Show Cause Regarding Federal-Mogul Corporation

Finally, the court considers the remaining, inactive Defendant, Federal-Mogul Corporation. The court ordered the Plaintiff to show cause in writing by January 12, 2015 why Defendant Federal-Mogul Corporation should not be dismissed. (Doc. 53). Though the Plaintiff served Federal-Mogul with the complaint, Federal-Mogul has not answered and the Plaintiff has not applied for an entry of default judgment. The Plaintiff responded that Federal-Mogul is currently in bankruptcy and should be dismissed without prejudice. (Doc. 54). Therefore, the court **DISMISSES** Federal-Mogul **WITHOUT PREJUDICE**.

### VI.     Conclusion

In summary, the court finds that it may consider the full record for summary judgment before the court except for certain portions of Beverly Olds' affidavit. Therefore, the court **GRANTS** in part and **DENIES** in part Carlisle's motion to strike, (Doc. 39); and **GRANTS** in part and **DENIES** in part Caterpillar's motion to strike, (Doc. 40). Further, the court **DENIES** the Plaintiff's Rule 56(d) motion to continue contained in her consolidated response to the Defendants' motions for summary judgment, (Doc. 32).

Second, the record shows that the Plaintiff has not established that the Defendants'

products existed at any of Ray Franklin's workplaces or that Ray Franklin ever worked in the vicinity of the Defendants' products. Therefore, the court **GRANTS** Honeywell's motion for summary judgment, (Doc. 22); **GRANTS** Carlisle's motion for summary judgment, (Doc. 24); and **GRANTS** Caterpillar's motion for summary judgment, (Doc. 26).

Finally, the court **DISMISSES** Federal-Mogul **WITHOUT PREJUDICE** at the Plaintiff's direction and **DIRECTS** the clerk to close this case.

The court will enter a separate order.

**DONE** and **ORDERED** this 10th day of February, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE